**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF RHODE ISLAND**

| | |
|---|---|
| GREGORY N. DUCKWORTH and<br>F/V REAPER, INC.,<br><br>Plaintiffs,<br><br>v.<br><br>UNITED STATES OF AMERICA, acting by and through<br>CARLOS M. GUTIERREZ, in his capacity as<br>SECRETARY OF COMMERCE,<br><br>Defendant. | C.A. No. 05-145S |

**DEFENDANT'S CROSS-MOTION FOR SUMMARY JUDGMENT**

Pursuant to Fed. R. Civ. P. 56 and the Court's Order dated July 21, 2005, defendant Carlos M. Gutierrez, in his capacity as Secretary of the United States Department of Commerce, respectfully moves for the entry of summary judgment in defendant's favor because there are no genuine issues of material fact and defendant is entitled to judgment as a matter of law. In support of this motion, defendant relies upon the pleadings on file in this action, the administrative record filed June 27, 2005, and defendant's separately-filed Memorandum in Support of Defendant's Cross-Motion for Summary Judgment and in Opposition to Plaintiffs' Motion for Summary Judgment. Pursuant to the Court's Minute Order dated July 21, 2005, the parties are not required to file statements of undisputed fact and genuine issues pursuant to Local Rule 12.1 because this is an action for judicial review on the administrative record.

Respectfully submitted this 4th day of November 2005.

ROBERT CLARKE CORRENTE
United States Attorney
MICHAEL IANNOTTI
Assistant U.S. Attorney
Fleet Center
50 Kennedy Plaza, 8th Floor
Providence, RI 02903
(401) 709-5000
(401) 709-5017 (fax)

KELLY A. JOHNSON
Acting Assistant Attorney General
United States Department of Justice
Environment & Natural Resources Division
JEAN E. WILLIAMS, Chief
LISA L. RUSSELL, Assistant Chief

KEVIN W. McARDLE, Trial Attorney
SBN 454569 (DC)
U.S. Department of Justice
Environment & Natural Resources Division
Wildlife & Marine Resources Section
Benjamin Franklin Station, P.O. Box 7369
Washington, D.C. 20044-7369
Tele: (202) 305-0219
Fax: (202) 305-0275

Attorneys for Defendant

OF COUNSEL:

CHARLES R. JULIAND
Senior Enforcement Attorney
National Oceanic and Atomospheric Administration
Office of the General Counsel
One Blackburn Drive
Gloucester, MA 01930
Tele: (978) 281-9240
Fax: (978) 281-9389

**CERTIFICATE OF SERVICE**

I hereby certify that on November 4, 2005, I caused to be served via overnight mail, postage prepaid, a copy of the foregoing DEFENDANT'S CROSS-MOTION FOR SUMMARY JUDGMENT on Plaintiffs' attorney of record at the following address:

Mark A. McSally
Kelly, Kelleher, Reilly & Simpson
28 Caswell Street
Narragansett, RI 02882
Tele: (401) 789-7800
Fax: (401) 789-6990

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF RHODE ISLAND**

GREGORY N. DUCKWORTH and
F/V REAPER, INC.,

Plaintiffs,

v. ) C.A. No. 05-145S

UNITED STATES OF AMERICA, acting by and through
CARLOS M. GUTIERREZ, in his capacity as
SECRETARY OF COMMERCE,

Defendant.

**MEMORANDUM IN SUPPORT OF DEFENDANT'S CROSS-MOTION FOR SUMMARY JUDGMENT AND IN OPPOSITION TO PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT**

Defendant, Carlos M. Gutierrez, in his capacity as Secretary of the United States Department of Commerce, respectfully submits the following memorandum in support of defendant's cross-motion for summary judgment and in opposition to plaintiffs' motion for summary judgment.

## I. INTRODUCTION

Plaintiffs Gregory N. Duckworth and F/V Reaper, Inc., challenge a $50,000 civil penalty imposed by the National Oceanic and Atmospheric Administration ("NOAA"), an agency within the U.S. Department of Commerce, for plaintiffs' violation of the Magnuson-Stevens Fishery Conservation and Management Act, 16 U.S.C. §§ 1801 et seq. ("Magnuson Act" or "Act"). In June 2003, NOAA issued a Notice of Violation and Assessment ("NOVA") to the plaintiffs which, as subsequently amended, charged them with violating regulations that prohibit catching or possessing monkfish in or from the Exclusive Economic Zone ("EEZ") without a permit. On

May 24, 2004, following a two-day hearing, an Administrative Law Judge ("ALJ") issued an initial decision upholding the NOVA. Plaintiffs petitioned NOAA's Administrator for discretionary review, but the petition was denied on February 22, 2005. On April 8, 2005, plaintiffs filed their complaint seeking judicial review.

As demonstrated below, the ALJ's decision is supported by substantial evidence and should be upheld. The record demonstrates that on September 9, 2002, special agents of the National Marine Fisheries Service ("NMFS"), a subagency of NOAA, boarded plaintiffs' vessel and discovered approximately 1,500 pounds of monkfish that had been sorted by size in two holding pens. It is undisputed that plaintiffs caught the monkfish in the EEZ without a permit. Thus, plaintiffs violated 50 C.F.R. § 648.14(a)(12), which makes it unlawful for any person to catch a regulated species in the EEZ without a permit, and 50 C.F.R. § 648.4(a)(9), which provides that any U.S. vessel must have a permit to possess monkfish in or from the EEZ.

Plaintiffs' argument that NOAA was also required to prove that plaintiffs intended to keep and sell the monkfish is foreclosed by Northern Wind, Inc. v. Daley, 200 F.3d 13 (1st Cir. 1999). In addition, the ALJ properly rejected plaintiffs' argument that the monkfish were merely "by-catch" as not credible. Finally, the ALJ reasonably determined that the amount of the penalty was appropriate given the gravity, nature, and circumstances of the violation. Accordingly, defendant is entitled to summary judgment in his favor as a matter of law.

## II. STATEMENT OF THE CASE

### A. Statutory And Regulatory Background

The Magnuson Act was enacted to achieve and maintain the long-term productivity of the Nation's fishery resources. 16 U.S.C. § 1801(a)-(b). Under the Act, the United States exercises

jurisdiction over all commercial and recreational fishery resources within the EEZ, which generally extends from three to 200 miles offshore. 16 U.S.C. §§ 1811(a), 1802(6).

The Magnuson Act authorizes the Secretary of Commerce ("Secretary") to implement and enforce fishery management plans ("FMPs") for the Nation's fisheries "to prevent overfishing and rebuild overfished stocks, and to protect, restore, and promote the long-term health and stability of the fishery." 16 U.S.C. § 1853(a)(1)(A). The Secretary has delegated his authority to NMFS, a subagency of NOAA within the Department of Commerce.

FMPs can require fishing vessels to obtain permits, restrict types of fishing gear, establish catch limits, and limit access to a fishery through closures or other limitations. 16 U.S.C. § 1853(b). For example, the regulations implementing the FMP for the monkfish fishery at issue in this case provide that "[a]ny vessel of the United States, including a charter or party boat, must have been issued and have on board a valid monkfish permit to fish for, possess, or land any monkfish in or from the EEZ." 50 C.F.R. §§ 648.4(a)(9), 648.1(a) (2002); AR 725. The regulations also make it unlawful for any person to "[f]ish for, take, catch, harvest or land any species of fish regulated by this part in or from the EEZ, unless the vessel has a valid and appropriate permit issued under this part and the permit is on board the vessel and has not been surrendered, revoked, or suspended." Id. § 648.14(a)(12) (2002); AR 724. During the relevant time period, monkfish were a regulated species for purposes of 50 C.F.R. § 648.14(a)(12), and vessels fishing for monkfish in the EEZ were subject to permitting requirements, daily limits, and reporting requirements. Administrative Record ("AR") 107 (¶ 6); 191-95, 732, 755-57.

It is unlawful for any person to violate the Magnuson Act or any implementing regulation. 16 U.S.C. § 1857(1)(a). During the relevant time period, any person found by the Secretary, after

notice and an opportunity for a hearing, to have violated the Act could be assessed a civil penalty not exceeding $120,000 per violation. 16 U.S.C. § 1858(a).[1] When determining the amount of the penalty, the Secretary must consider the nature, circumstances, extent, and gravity of the violation, the degree of culpability, history of prior offenses, and such other matters as justice may require. Id. The Secretary may also consider information provided by the violator relating to his ability to pay the penalty so long as the information is provided at least 30 days prior to the administrative hearing. Id. Any person against whom a civil penalty has been assessed may seek judicial review by filing a complaint against the Secretary in the appropriate district court within 30 days of the date of the order assessing the penalty. Id. § 1858(b).

## B. Factual Background

On September 9, 2002, a New York State Department of Environmental Conservation ("NY-DEC") patrol boat approached the *F/V True American* in the EEZ approximately 15 miles south of Montauk, New York. AR 107 (¶ 7), 733-34, 763-64. The *F/V True American* is owned by Reaper, Inc., a Rhode Island corporation owned by Gregory N. Duckworth, who was also captain of the *F/V True American* at the time. AR 106-07 (¶¶ 1-4), 758-61. On board the patrol boat were law enforcement officers from the NY-DEC and NMFS investigating allegations of illegal monkfishing by vessels from the Port Judith area, including the *F/V True American*. AR 183-86, 206-07, 212-15, 733-34, 763.

[1] Although the Magnuson Act provides that the maximum civil penalty is $100,000 per offense, 16 U.S.C. § 1858(a), the inflation-adjusted maximum was $120,000 during the relevant time period. 65 Fed. Reg. 65,260, 65,262 (Nov. 1, 2000). The current maximum is $130,000. 69 Fed Reg. 74,416, 74,418 (Dec. 14, 2004).

As the patrol boat approached, the *F/V True American* was moving at cruising speed. Mr. Duckworth was at the helm, and none of the crew members was discarding fish (or anything else) or handling fish or fishing gear. AR 107 (¶¶ 8-10), 273-76, 307, 315-16, 343, 736, 764-65. Special Agent James Cassin of NMFS and NY-DEC officer Luke R. Billoto boarded the *F/V True American*. AR 764, 779. They observed one plastic fish tote containing approximately 50 pounds of lobster and another containing 100-200 pounds of skate. AR 765, 325-26. They also observed approximately 1,500 pounds of monkfish segregated by size in two holding pens. One pen contained clean, larger monkfish stacked in an orderly fashion. The other pen contained smaller monkfish and debris. AR 765, 251-52, 274, 290-91, 352-53, 387-89. All of the monkfish appeared to be dead. AR 275, 325-26, 107 (¶¶ 7, 11, 13).

Special Agent Cassin asked Mr. Duckworth for the vessel's current federal permits. Mr. Duckworth stated that he had none (other than an operator's permit) and that he did not need any because he was fishing only for skate. AR 107 (¶¶ 5, 12), 734, 765. Special Agent Cassin asked Mr. Duckworth about the monkfish, and Mr. Duckworth stated that they were discards to be thrown overboard. AR 765. Special Agent Cassin asked why the monkfish were separated into two bins. Mr. Duckworth responded that they had been separated for discard. AR 765-66. Special Agent Cassin then asked why the monkfish had not yet been discarded. Mr. Duckworth offered no response. AR 765-66, 107 (¶ 12).

Special Agent Cassin asked Mr. Duckworth for the vessel's logbook. AR 766. Mr. Duckworth stated that he did not keep a logbook. AR 109, 766. However, Mr. Duckworth later testified that he did have notes in his pocket indicating what he had caught that day. He chose

not to disclose the notes because he was not specifically asked for them and he "wasn't going to volunteer any information." AR 108-09, 114, 473-74, 498-99.

The officers returned to the patrol boat and escorted the *F/V True American* back to its home port. AR 779. NMFS Special Agent Kevin Flanagan then boarded the vessel and spoke to Mr. Duckworth, who again stated that he had intended to discard the monkfish. He also stated, for the first time, that he had noticed a "hydraulic leak" as he and the crew were retrieving the third and final gill-net line. AR 735-36, 222-23. Mr. Duckworth later testified that when he discovered the leak, he told his crew to take a break and not discard the monkfish until he fixed the leak and cleaned up the slippery hydraulic fluid. AR 83, 449-51. Mr. Duckworth stated that the law enforcement officers boarded his vessel just as he had finished cleaning up below deck. AR 109, 80, 455-56, 508-09. Mr. Duckworth testified that he did not show the law enforcement officers the rag he used to clean up because he had tossed it overboard. AR 511-12. Special Agent Flanagan examined the area purportedly affected by the leak and found it dry and free of hydraulic residue. AR 222-23, 736.

Special Agent Flanagan asked Mr. Duckworth precisely where his gill nets had been set so that they could be inspected. Mr. Duckworth chose not to disclose that information. AR 226-29, 500. Mr. Duckworth subsequently abandoned the monkfish and the lobster (which he was also not authorized to retain). AR 195-96, 463, 736-37, 814.

### C. <u>Administrative Proceedings</u>

On June 6, 2003, NOAA issued a Notice of Violation and Assessment ("NOVA") to the plaintiffs for catching monkfish in the EEZ without a valid permit in violation of 50 C.F.R. § 648.14(a)(12). The NOVA proposed a $50,000 penalty. AR 104, 2-6. The charges were later

amended to include 50 C.F.R. § 648.4(a)(9) which, as stated above, provides that any U.S. vessel "must have been issued and have on board a valid monkfish permit to fish for, possess, or land any monkfish in or from the EEZ." 50 C.F.R. §§ 648.4(a)(9); AR 54-56, 104, 345-46.

Plaintiffs requested a hearing which was held on January 6-7, 2004, in Providence, Rhode Island, before ALJ Walter J. Brudzinski. AR 103-04. During the hearing and in their post-hearing brief, plaintiffs argued that the monkfish were by-catch from their third and final gill-net line that the crew had not been able to discard because of the hydraulic leak. AR 111, 78-83. Plaintiffs also argued that NMFS was required to prove that plaintiffs intended to keep and sell the monkfish. Id. Mr. Duckworth testified that when he intends to keep and sell monkish, he promptly guts them and puts them on ice. AR 78-83, 108-09, 111. Plaintiffs argued that since there was no ice on board the *F/V True American* and the fish had not been gutted at the time the patrol boat arrived, plaintiffs plainly did not intend to keep and sell the monkfish. Id. Finally, plaintiffs argued that the $50,000 penalty was excessive, as demonstrated by a settlement agreement from another case in which different respondents agreed to pay a lesser penalty for illegal possession of monkfish. AR 84-85, 111.

On May 25, 2004, the ALJ issued an initial decision upholding the NOVA. AR 103-16. The ALJ rejected plaintiffs' argument that the monkfish were merely by-catch that the crew was about to discard as not credible. AR 114. The ALJ also rejected plaintiffs' argument that NOAA was required to prove that plaintiffs intended to keep and sell the monkfish because the regulations do not contain an intent requirement. AR 112-13. Finally, the ALJ determined that the $50,000 penalty reasonably reflected the "gravity, nature, and circumstances of this

violation," AR 116, and that a settlement agreement from another case – the details of which were unknown – was entitled to no weight. AR 115.

On June 28, 2004, plaintiffs petitioned NOAA's Administrator for discretionary review. The petition was denied on February 22, 2005, and sent to the plaintiffs on March 11, 2005. AR 164-67. Plaintiffs filed their complaint on April 8, 2005.

## III. STANDARD OF REVIEW

The Court may set aside a civil penalty assessed by the Secretary only if his findings are not "supported by substantial evidence, as provided in [5 U.S.C. §] 706(2)." 16 U.S.C. § 1858(b); 5 U.S.C. § 706(2)(E). "Substantial evidence" means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Consolo v. Fed. Mar. Comm'n, 383 U.S. 607, 620 (1966). "This is something less than the weight of the evidence, and the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence." Id. This standard "accords great deference to agency decision-making; the agency's decision is presumed valid, and judicial review is solely to determine whether substantial evidence in the record supports the decision." Northern Wind, Inc. v. Daley, 200 F.3d 13, 17 (1st Cir. 1999). "Moreover, although an agency's answers to questions of law require somewhat greater scrutiny, the Court owes 'substantial deference to an agency's interpretation of its own regulations.'" Id. (quoting Thomas Jefferson Univ. v. Shalala, 512 U.S. 504, 512 (1994)).

Judicial review under the substantial evidence standard is conducted "on the record considered as a whole." Penobscot Air Servs., Ltd. v. F.A.A., 164 F.3d 713, 718 (1st Cir. 1999). The Court "is not required to resolve any facts in a review of an administrative proceeding.

Certainly, there may be issues of fact before the administrative agency. However, the function of the district court is to determine whether or not as a matter of law the evidence in the administrative record permitted the agency to make the decision it did." Occidental Eng'g Co. v. INS, 753 F.2d 766, 769 (9th Cir. 1985). "Because there are generally no facts in dispute in administrative record cases, and the Court need not and, indeed, may not, 'find' underlying facts, there are no material facts essential to the Court's resolution of this action, and the parties' motions for summary judgment are appropriate." Cape Hatteras Access Pres. Alliance v. U.S. Dep't of Interior, 344 F. Supp. 2d 108, 119 (D.D.C. 2004).

## IV. ARGUMENT

### A. The ALJ's Conclusion That Plaintiffs Violated The Magnuson Act Is Supported By Substantial Evidence

As stated above, 50 C.F.R. § 648.14(a)(12) makes it unlawful to "catch . . . any species of fish regulated by this part in or from the EEZ, unless the vessel has a valid and appropriate permit." The term "catch" is defined to include "any activity that results in killing any fish or bringing any live fish on board a vessel." 50 C.F.R. § 600.10. The evidence demonstrates that plaintiffs either killed monkfish or brought live monkfish on board the *F/V True American* in or from the EEZ without a valid permit. AR 112-14. Accordingly, the ALJ correctly ruled that plaintiffs violated 50 C.F.R. § 648.14(a)(12). Id.

In addition, 50 C.F.R. § 648.4(a)(9) provides that any U.S. vessel "must have been issued and have on board a valid monkfish permit to fish for, possess, or land any monkfish in or from the EEZ." (Emphasis added). Although the term "possess" is undefined, the ALJ, relying on In re Whitney, 6 O.R.W. 479, 1991 WL 288718 (NOAA), reasonably interpreted the term to include

"hav[ing] in one's actual and physical control." AR 106, 113; see Northern Wind, 200 F.3d at 18 (upholding ALJ's interpretation of "possession" based on In re Whitney). Since it is undisputed that plaintiffs exercised actual and physical control over the monkfish without a valid permit, they violated 50 C.F.R. § 648.4(a)(9). AR 112-14.

Plaintiffs' argument that NOAA was required to prove that plaintiffs intended to keep and sell the monkfish is foreclosed by Northern Wind. In that case, NMFS charged Northern Wind with violating 50 C.F.R. § 650.7(a) (1992), which made it unlawful to "possess" sea scallops not meeting certain size requirements. NMFS law enforcement officers discovered nonconforming scallops in Northern Wind's facilities that had been stored there by another company, Ocean Obsession, pursuant to a lease agreement with Northern Wind. NMFS charged both companies with violating 50 C.F.R. § 650.7(a)(1992), and an ALJ upheld the charge. See Northern Wind, 200 F.3d at 15-17.

On appeal, Northern Wind argued that NOAA was required to prove that Northern Wind "knowingly" possessed the scallops. Northern Wind, 200 F.3d at 19. Northern Wind contended that it did not know the offending scallops had been placed in its facility and, as a result, it did not unlawfully "possess" them. Id. The First Circuit resoundingly rejected the argument:

> As a general matter, scienter is not required to impose civil penalties for regulatory violations when the regulation is silent as to state of mind. Further, a *mens rea* element is never presumed for regulatory offenses. Moreover, scienter never has been required for violations of public welfare regulations because they are not in the nature of positive aggressions or invasions, but are in the nature of neglect where the law requires care, or inaction where it imposes a duty. Finally, scienter is not an element of a civil defense under the Magnuson Act. Because conservation-related offenses under the Magnuson Act are strict liability offenses, Northern Wind's protests as to its state of mind are irrelevant.

Id. (internal citations and quotations omitted); accord Roche v. Evans, 249 F. Supp. 2d 47, 57 (D. Mass. 2003) (holding that fisherman was "strictly liable to a civil penalty for entering the closed area [in violation of regulation], without proof of intent that he knowingly or intentionally violated the proscription").

The regulations at issue in this case do not contain a scienter element. 50 C.F.R. §§ 648.14(a)(12), 648.4(a)(9); AR 112-13. Thus, the ALJ's conclusions that the "regulation[s] ha[ve] no scienter requirement were not plainly erroneous and are consistent with the regulation." Northern Wind, 200 F.3d at 19; Roche, 249 F. Supp. 2d at 57. Thus, as the ALJ ruled, the fact that there was no ice on board the *F/V True American* at the time it was boarded and the monkfish had not yet been gutted is immaterial. AR 114.

The ALJ also properly rejected plaintiffs' argument that the monkfish were merely by-catch as not credible. AR 113-14. "The credibility of witnesses is for the ALJ to determine, and the reviewing court will set aside such findings only when he oversteps the bounds of reason." N.L.R.B. v. Am. Spring Bed Mfg. Co., 670 F.2d 1236, 1242 (1st Cir. 1982); Frustaglia v. Secretary of Health and Human Servs., 829 F.2d 192, 195 n.1 (1st Cir. 1987). The ALJ's rejection of plaintiffs' "by-catch" defense was well within the bounds of reason.

As the patrol boat approached, the *F/V True American* was moving at cruising speed, and the crew not discarding fish, handling fish, or handling fishing gear. AR 273-76, 307, 736, 764-65. Moreover, the monkfish were not in a pile about to be thrown overboard, as one would expect if they were truly by-catch. AR 113, 219, 264. They were segregated from the other species and sorted by size in two holding pens. AR 113, 265, 274, 387-89, 764-65. The lobster

were also segregated and placed in a fish tote – even though Mr. Duckworth was also not authorized to retain the lobsters. AR 99, 111, 222, 262, 463.

Most importantly, Mr. Duckworth's explanation as to why the monkfish had not been discarded – the alleged "hydraulic leak" – does not withstand scrutiny. When Special Agent Cassin boarded the *F/V True American*, he asked Mr. Duckworth point-blank why the monkfish had not been discarded. Mr. Duckworth offered no response. AR 766, 294. It was only several hours later, after the *F/V True American* had returned to Port Judith, that Mr. Duckworth first mentioned the alleged "hydraulic leak" to Special Agent Flanagan. AR 736, 217-18, 222-23.

If, as plaintiffs assert, the patrol boat arrived "[j]ust as [Mr. Duckworth] was completing the clean-up operation," Pls.' Br. 6, he surely would have mentioned the leak to Special Agent Cassin. But he did not. Furthermore, Special Agent Flanagan examined the area surrounding the alleged leak and found it dry and free of hydraulic residue. AR 736, 222-23. In addition, although Mr. Duckworth claimed he could not show the officers the rag he allegedly used to clean up the leak because he had tossed it overboard (AR 511-12), he also testified that he was cleaning up with the rag "down below" when the officers boarded his the vessel (AR 455-57, 508-09), and none of the officers observed him or anyone else throwing anything overboard. AR 107 (¶ 9), 273-76, 342, 763-64. Finally, Mr. Duckworth chose not to produce his notes indicating what he had caught that day because "he wasn't going to volunteer any information," AR 473-74, 498-99, and he refused to disclose the precise location of his gill nets. AR 226-29, 500. As the ALJ found, "this evasive conduct and reluctance to be forthcoming further detracts from [Mr. Duckworth's] credibility." AR 114.

Although the plaintiffs argue that the evidence should be interpreted differently (Pls.' Br. 7, 12-13), their arguments are unavailing. Even assuming (without conceding) that the evidence could be interpreted differently, "the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence." Consolo, 383 U.S. at 620; Penobscot Air Servs., 164 F.3d at 718. Since "a reasonable mind might accept" the evidence outlined above "as adequate to support" the ALJ's conclusion that the monkfish were not by-catch that the plaintiffs were about to discard, the ALJ's decision is supported by substantial evidence.

Finally, plaintiffs argue that the ALJ's decision has "far-reaching impacts on all fisheries" because it prohibits fisherman from retaining by-catch for any length of time. Pls.' Br. 8-10; AR 138-40. This argument fails, however, because the ALJ did not rule that retaining by-catch for any period is illegal, regardless of the circumstances. Rather, the ALJ held that in this particular case, the evidence did not indicate that the monkfish were by-catch that the plaintiffs were about to discard. AR 113-14, 161.

Furthermore, as the ALJ correctly noted, plaintiffs' assertion that they were not required to promptly discard the monkfish would have "far-reaching impacts on all fisheries" because it would render the regulatory prohibitions meaningless:

> [R]egulations prohibiting fishing for or retaining certain species are of no use if fishermen are allowed to keep all of their by catch on board until they decide when to throw them back. If that were the case, fisherman interdicted while possessing illegal catch would merely state to law enforcement officers that they intended to throw them back but just didn't get around to it. It is similar to what [plaintiffs] are claiming in this case and that is why I am rejecting their argument.

AR 113-14. The ALJ's decision is plainly reasonable and should be upheld. Cf. Roche, 249 F. Supp. 2d at 59 (upholding strict enforcement of the regulations because it creates "a 'bright line' standard that can easily and efficiently be applied to advance the goals of the regulations").

**B. The ALJ's Decision To Uphold The Penalty Is Supported by Substantial Evidence**

As discussed above, civil violations of the Magnuson Act are strict liability offenses. Northern Wind, 200 F.3d at 19. However, when assessing a civil penalty, the Secretary must "take into account the nature, circumstances, extent, and gravity of the prohibited acts committed and, with respect to the violator, the degree of culpability, any history of prior offenses, and such other matters as justice may require." 16 U.S.C. § 1858(a). The Secretary may also consider any information provided by the violator relating to his ability to pay the penalty so long as the information is provided at least 30 days prior to the administrative hearing. Id.

NOAA's guidelines provide that the appropriate penalty range for a first offense is $5,000 to $80,000. AR 867. The $50,000 penalty is well within this range, and the plaintiffs did not argue or offer evidence that they were unable to pay the penalty. AR 115. Finally, the ALJ found that the amount of the penalty "reasonably reflects the gravity, nature, and circumstances" of the violation, AR 116, and the record fully supports his decision.

The plaintiffs "were not novices who happened to make an isolated mistake." AR 115. Mr. Duckworth had caught and sold a significant quantity of monkfish in the period immediately preceding the violation for which he was charged, and he was well aware that it was illegal to catch and retain monkfish from the EEZ without a permit. AR 115, 184-85, 197-200, 216, 222, 732-33, 765, 819-49. Nevertheless, when caught in the EEZ with 1,500 pounds of monkfish that

were separated from his other catch and sorted by size, he chose not to acknowledge his illegal conduct or even respond forthrightly to the inquiries of the law enforcement officers. AR 114-15. It is clear that "a reasonable mind might accept" these facts as "adequate to support" the imposition of a significant penalty. Consolo, 383 U.S. at 620.

In addition, the ALJ rationally determined that any reduction in the penalty would provide an incentive to others to flout the permitting and reporting requirements and would render the regulatory prohibitions meaningless. AR 115. It is also "reasonably foreseeable that relatively small civil penalties jeopardize the recovery of fisheries stocks and enable unscrupulous fisherman to compete unfairly with those who are law-abiding." AR 116, 69.

Finally, the ALJ properly gave no weight to the settlement agreement attached to plaintiffs' post-hearing brief. AR 115. The settlement agreement is from an unrelated case involving different respondents and agency counsel. AR 115; 87-95. The details of the other case are unknown, and the settlement agreement does not indicate that NOAA intentionally treated similarly situated offenders differently without a rational basis for doing so. Id.; see Fishing Co. of Alaska, Inc. v. United States, 195 F. Supp. 2d 1239, 1254 (W.D. Wash. 2002) (rejecting fishing company's claim of selective prosecution because "even assuming there was different treatment here, plaintiff has presented no evidence that the decision to prosecute plaintiffs and no other vessel was irrational or motivated by a discriminatory purpose"), aff'd, 333 F.3d 1045 (9th Cir. 2003). Accordingly, the ALJ properly upheld the amount of the penalty.

## V. CONCLUSION

For the foregoing reasons, defendant's cross-motion for summary judgment should be granted and plaintiffs' motion for summary judgment should be denied.

Respectfully submitted this 4th day of November 2005.

ROBERT CLARKE CORRENTE
United States Attorney
MICHAEL IANNOTTI
Assistant U.S. Attorney
Fleet Center
50 Kennedy Plaza, 8th Floor
Providence, RI 02903
(401) 709-5000
(401) 709-5017 (fax)

KELLY A. JOHNSON
Acting Assistant Attorney General
United States Department of Justice
Environment & Natural Resources Division
JEAN E. WILLIAMS, Chief
LISA L. RUSSELL, Assistant Chief

KEVIN W. McARDLE, Trial Attorney
SBN 454569 (DC)
U.S. Department of Justice
Environment & Natural Resources Division
Wildlife & Marine Resources Section
Benjamin Franklin Station, P.O. Box 7369
Washington, D.C. 20044-7369
Tele: (202) 305-0219
Fax: (202) 305-0275

Attorneys for Defendant

OF COUNSEL:

CHARLES R. JULIAND
Senior Enforcement Attorney
National Oceanic and Atomospheric
Administration
Office of the General Counsel
One Blackburn Drive
Gloucester, MA 01930
Tele: (978) 281-9240
Fax: (978) 281-9389

**CERTIFICATE OF SERVICE**

I hereby certify that on November 4, 2005, I caused to be served via overnight mail, postage prepaid, a copy of the foregoing MEMORANDUM IN SUPPORT OF DEFENDANT'S CROSS-MOTION FOR SUMMARY JUDGMENT AND IN OPPOSITION TO PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT on Plaintiffs' attorney of record at the following address:

Mark A. McSally
Kelly, Kelleher, Reilly & Simpson
28 Caswell Street
Narragansett, RI 02882
Tele: (401) 789-7800
Fax: (401) 789-6990